IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT DUNCAN; JANET DUNCAN; and CHRISTOPHER G., a minor through his guardian, ROBERT DUNCAN, | ) ) ) ) ) | 2:06-cv-0647-GEB-DAD |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER* |
| COUNTY OF SACRAMENTO; and STEVE LEE, | ) ) ) | |
| Defendants. | ) ) | |

        Defendants County of Sacramento (the "County") and Steve Lee ("Lee") (collectively, "Defendants") move for summary judgment. Plaintiffs countered the motion by moving for a continuance under Federal Rule of Civil Procedure ("Rule") 56(f), asserting that they need time to conduct more discovery, and by filing an untimely opposition brief.

_____

        * The caption has been modified to reflect dismissal of the doe defendants, as stated in the Status (Pretrial Scheduling) Order filed September 6, 2006, and the parties' dismissal of former defendant California Highway Patrol Officer Russell by stipulation filed on August 7, 2007.

BACKGROUND

1

2        Plaintiffs are Robert Duncan ("Robert"), his wife Janet

3   Duncan ("Janet"), and Janet's son from a previous relationship,

4   Christopher G. ("Christopher") (collectively, "Plaintiffs").

5   Plaintiffs allege that Lee, who is a process server employed in the

6   County district attorney's office, violated Plaintiffs' Fourth and

7   Fourteenth Amendment rights by the manner in which Lee followed

8   Plaintiffs' vehicle and caused California Highway Patrol ("CHP")

9   officers to effectuate a stop of Plaintiffs' vehicle and a seizure of

10  Plaintiffs.

11       On August 31, 2005, Plaintiffs approached their home in a

12  vehicle driven by Robert.  (Decl. of Robert Duncan in Opp'n to Defs.'

13  Mot. for Summ. J. ("Duncan Decl.") ¶ 8.)  Lee was waiting at

14  Plaintiffs' home so he could serve Robert with a subpoena requiring

15  Christopher to be a witness at a criminal trial involving allegations

16  under California Penal Code section 245.[1]  (Pls.' Statement of

17  Disputed and Undisputed Facts ("SDUF") ¶ 1.)

18       Plaintiffs had never seen Lee before.  (Duncan Decl. ¶ 9.)

19  Lee did not identify himself and was not wearing a uniform.  (Id.

20  ¶¶ 9-10.)  Further, Lee was driving a car that did not have any

21  official markings on it.  (Id.)  Lee walked toward Plaintiffs' vehicle

22  as it approached Plaintiffs' residence, but Robert changed the course

23  of the vehicle and drove away.  (Id. ¶ 11; SDUF ¶ 4.)  Lee got into

24  his own car and followed.  (SDUF ¶ 4.)  Lee attempted to serve the

25  _____

26       [1]   California Penal Code section 245 makes it a crime to "assault
     . . . the person of another with a deadly weapon or instrument other
27   than a firearm or by any means of force likely to produce great bodily
     injury . . . ."  Because Christopher was a minor, it was necessary for
28   Lee to serve Robert.  (Decl. of Steven Lee in Support of Defs.' Mot. for
     Summ. J. ("Lee Decl.") ¶ 2.)

subpoena by getting out of his car and approaching Plaintiffs' vehicle on foot when Plaintiffs were stopped in traffic at least three times. (Id. ¶ 6.)

Lee persisted by following Plaintiffs on Highway 99 from Elk Grove, California, to downtown Sacramento, California.  (Id. ¶¶ 14-15.)  Lee accelerated quickly behind Plaintiffs several times, nearly ramming the bumper of their car, and "tailgated" Plaintiffs' car numerous times.  (Id. ¶¶ 16-17.)  However, Lee's car never came into contact with Plaintiffs' car, and he did not hinder Plaintiffs' movement.  (Id. ¶ 14.)

Robert declares that during the entire time of Lee's pursuit, Robert obeyed traffic signs and light signals, and drove at or below the speed limit.  (Duncan Decl. ¶ 13.)

After Plaintiffs drove onto Highway 99, Lee called 911 on his cell phone and told the 911 dispatch operator that he worked for the district attorney's office and was "following a driver that is trying to evade me, driving erratically on Highway 99 northbound." (See Decl. of Steven McKinney in Support of Defs.' Mot. for Summ. J. ("McKinney Decl."), Ex. B).  Lee told the dispatch operator that Christopher was "**wanted as a witness in a 245** and he's being uncooperative . . . .  He's driving erratically, he's been blowing red lights, he's been driving through bike lanes, he's making right hand turns out of left hand lanes."  (Id. (emphasis added).)

A CHP dispatch operator contacted a CHP officer and stated: "I have the DA's office requesting an assist to stop a vehicle.  He's been in pursuit of this vehicle for approximately 10 minutes." (McKinney Decl., Ex. C.)  In response the officer asked the dispatch operator if there were "[w]arrants for the stop[.]"  (Id.)  The

3

dispatch operator responded:  "The original warrant is a 245 and he has been **evading** the [reporting party]."  (Id. (emphasis added).)  The dispatch operator later told the officer again that "[t]he **party is wanted** for 245."  (Id. (emphasis added).)  The officer asked the dispatch operator, "Guns?  Weapons?  Anything?  Do we know anything about that?"  (Id.)  The dispatch operator responded that Lee "doesn't believe that they are armed but the want is 245."  (Id.)  The CHP officer was told Plaintiffs were "evading" Lee; but there is no evidence that the CHP officer was told Plaintiffs were driving erratically, "blowing red lights," making illegal turns, or driving in bike lanes.  (See id., Exs. B & C.)

        Lee described Plaintiffs' vehicle to the dispatch operator, and provided updates on Plaintiffs' current location on the highway.  (Id., Ex. B.)  Lee also turned on the flashing lights on his vehicle so the officers would know to stop the vehicle he was following.  (Id.)  Subsequently, CHP officers stopped Plaintiffs' vehicle by activating their emergency lights.  (Id.)  After the stop, CHP officers told Plaintiffs to exit their vehicle.  (Duncan Decl. ¶ 20.)  Several of the CHP officers had their guns drawn.  (Id.)  The officers placed Janet in handcuffs and indicated that they wanted to handcuff Robert, but Robert told them he was a dialysis patient; he was not handcuffed.  (Id.)  Another CHP officer led Christopher away from the stopped car.  (Id.)  Lee had no further participation in Plaintiffs' detention, other than his communication to one of the CHP officers on the scene that Christopher was only sought as a witness in a Penal Code section 245 case.  (Id. ¶ 13.)  That CHP officer told Lee there had been a miscommunication and asked Lee to apologize to Plaintiffs,

which Lee did after serving the subpoena on Robert.   (Id. ¶ 15; Lee Decl. ¶ 11.)

Plaintiffs allege, under 42 U.S.C. § 1983, that Lee and the County violated their rights not to be subjected to excessive force and unreasonable seizure under the Fourth Amendment, and violated their substantive due process rights under the Fourteenth Amendment. Plaintiffs also allege various state law claims and a § 1983 claim against the County for failure to train Lee.

<u>PLAINTIFFS' RULE 56(f) MOTION</u>

Plaintiffs move under Rule 56(f) for an opportunity to conduct additional discovery on issues involved in Defendants' summary judgment motion.  But an amendment of the Rule 16 Scheduling Order is necessary before Plaintiffs can be authorized to conduct further discovery since the prescribed discovery completion date and the final hearing date for motions have passed.  See <u>Saavedra v. Murphy Oil U.S.A., Inc.</u>, 930 F.2d 1104, 1107 (5th Cir. 1991) (stating movant "should have sought an extension of the discovery cutoff date [before moving for a Rule 56(f) continuance]"); <u>see also Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 920-21 (9th Cir. 1997) (upholding denial of a Rule 56(f) motion where discovery deadline had passed).  A Rule 16 scheduling order cannot be modified except upon a showing of good cause.  Fed. R. Civ. P. 16(b).

Plaintiffs have not met the "good cause" standard. Therefore, their Rule 56(f) motion is denied.

///

///

///

///

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[2]

I. Federal Claims Against Lee

    A. Excessive Force and Unreasonable Seizure

        Lee seeks summary judgment on Plaintiffs' Fourth Amendment claims, arguing he did not seize Plaintiffs and was not the proximate cause of their seizure, and that he was not responsible for any excessive force used.  (Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 3:19-20.)

        "A seizure occurs either when a suspect is physically forced to stop or when the suspect submits to [an official's] show of authority." United States v. Hernandez, 27 F.3d 1403, 1406 (9th Cir. 1994).  Plaintiffs have demonstrated they were seized by evidence they presented of the CHP officers' stop of their vehicle.  See Colo. v. Bannister, 449 U.S. 1, 4 n.3 (1980) (per curiam) ("There can be no question that the stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment.").  Lee is liable for this seizure if his actions were the proximate cause of the seizure; in other words, Lee is liable if he "set[] in motion a series of acts by others which [Lee] kn[ew] or reasonably should [have] know[n] would cause others to inflict the constitutional injury." Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997) (quoting Johnson v. Duffy, 588 F2d 740, 743-44 (9th Cir. 1978)).  Here the undisputed facts reveal Lee told CHP's emergency dispatch that an occupant in the vehicle eventually stopped was involved with a 245 case and Lee activated his emergency vehicle lights to assist the CHP effect the detention.  (See McKinney Decl.,

_____

     [2]   The summary judgment standards are well known and need not be repeated here.

6

Ex. A.)  Plaintiffs have presented sufficient evidence to create genuine issues of material fact as to whether Lee knew or reasonably should have known his actions caused the CHP officers to effectuate a stop of Plaintiffs' vehicle, temporarily detain Plaintiffs, and place Janet Duncan in handcuffs.  See White v. Roper, 901 F.2d 1501, 1506 (9th Cir. 1990) (stating that defendant's summary judgment motion on § 1983 claim should have been denied since "[t]he question of proximate cause should have been left to the jury").

Accordingly, Lee's motion for summary judgment on Plaintiffs' Fourth Amendment claims is denied on this ground.

B. Substantive Due Process

Lee seeks summary judgment on Plaintiffs' Fourteenth Amendment substantive due process claims, arguing that his vehicle pursuit of Plaintiffs' vehicle and his 911 call to CHP dispatch was not sufficiently offensive to "shock the conscience" for him to be exposed to liability under this claim.  (Defs.' Mot. at 4:13-22.)  A government official's conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" violates the due process clause of the Fourteenth Amendment.  County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998).

These claims are subsumed in Plaintiffs' Fourth Amendment seizure claims; therefore, the Fourth Amendment is the constitutional provision applicable to these claims.  See Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989) (indicating that the Fourth Amendment seizure analysis must be applied in a situation that "'provides an explicit textual source of constitutional protection'" at issue)).

1   Accordingly, Lee's motion for summary judgment is granted on

2   Plaintiffs' substantive due process claims.

3   C. Qualified Immunity

4   Lee seeks summary judgment on his qualified immunity

5   defense, arguing that it shields him from being exposed to liability

6   on Plaintiffs' federal claims. (Defs.' Mot. at 5:4-6:10.)   The issues

7   involved in deciding this defense are whether Plaintiffs' Fourth

8   Amendment rights were "clearly established," and whether "a reasonable

9   [official] would have understood that what he was doing violated

10  th[ose] right[s]."   Meredith v. Erath, 342 F.3d 1057, 1060-61 (9th

11  Cir. 2003).

12  Plaintiffs had a clearly established right to be free from a

13  traffic stop that was not justified by at least reasonable suspicion

14  that a Plaintiff violated a law.   See Price v. Kramer, 200 F.3d 1237,

15  1248 (9th Cir. 2000) (holding that a vehicle stop is an unreasonable

16  seizure "[u]nless there is at least articulable and reasonable

17  suspicion . . . that either the vehicle or its occupant is . . .

18  subject to seizure for violation of law . . ." (quoting United States

19  v. Burt, 765 F.2d 1364, 1367 (9th Cir. 1985)).

20  Consideration of the summary judgment record in the light

21  most favorable to Plaintiffs reveals that the reasonable inference can

22  be drawn that Lee's only reason for causing the CHP officers to seize

23  Plaintiffs was to enable Lee to serve the witness appearance subpoena.

24  This record shows Lee is exposed to liability for Plaintiffs' Fourth

25  Amendment seizure claims since a reasonable official in Lee's

26  situation would have known he lacked reasonable suspicion justifying

27  seizure of Plaintiffs.   See Hope v. Pelzer, 536 U.S. 730, 741 (2002)

28  (holding that officials may be on notice of a clearly established

8

constitutional violation "even in novel factual circumstances").
Since genuine issues of material fact exist concerning Lee's qualified
immunity defense, his summary judgment motion on this ground is
denied.

II.  Federal Claim Against the County

        The County seeks summary judgment of Plaintiffs' federal
claim against it, arguing that the County is not liable under Monell
v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  The undisputed facts
reveal the County's policy in effect at the time "prohibit[ed]
breaking traffic laws" in the situation at issue, and "allow[ed]
pursuits only in the instance of a serious crime involving great
bodily harm," and "require[d] a pursuit be terminated if the risk to
the public outweighs the benefit of the pursuit . . ."  (SDUF ¶ 17.)
Plaintiffs have not countered the County's evidence with specific
facts establishing a genuine issue of material fact exists for trial.
Therefore, the portion of the County's motion made under Monell is
granted.

        Plaintiffs argue the County is still exposed to liability
for their claim that it improperly trained Lee, since "Lee's conduct
and driving tactics were so outrageous and dangerous, and he had such
disregard for every major District Attorney policy regarding vehicle
pursuits, that it is clear that Lee received no training, or received
inadequate training."  (Pls.' Opp'n at 11:3-5.)  However, it is
undisputed that Lee has no previous incidents of improper vehicle
pursuits and only the incident itself has been proffered on training.
(SDUF ¶ 18.)  "That a particular officer may be unsatisfactorily
trained will not alone suffice to fasten liability on the city, for
the officer's shortcomings may have resulted from factors other than a

faulty training program." <u>City of Canton v. Harris</u>, 489 U.S. 378, 390-91 (1989).  Accordingly, the County's motion on this ground is granted.

III.  State Law Claims

   A. Section 52.1 Claim

       Lee seeks summary judgment on Plaintiffs' California Civil Code section 52.1 claim, arguing that "there is no evidence that Lee . . . threatened or otherwise prevented [P]laintiffs from exercising any legal right . . . ."  (Defs.' Mot. at 9:7-8.)

       Section 52.1(a) provides a claim against "a person [who] . . . interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any . . . individuals of rights secured by the Constitution or laws of the United States."  Cal. Civ. Code § 52.1.  "The word 'interferes' as used in [section 52.1] means 'violates.'"  <u>Austin B. v. Escondido Union Sch. Dist.</u>, 149 Cal. App. 4th 860, 883 (2007).

       Lee argues that he "merely followed [Plaintiffs] in an attempt to serve process."  (Defs.' Mot. at 9:8.)  However, Plaintiffs have presented evidence that Lee violated their Fourth Amendment rights by causing CHP officers to effectuate an unconstitutional stop of Plaintiffs' vehicle.  (<u>See</u> <u>supra</u>.)  Further, Plaintiffs have presented evidence that Lee's interference with their constitutional rights was accompanied by intimidation.  Duncan declares that during Lee's pursuit of Plaintiffs, Lee "accelerated quickly behind me, nearly ramming the bumper of my car.  This happened several times, and I feared for my life because I thought [] Lee was trying to run me off the road or trying to get my car to spin out."  (Duncan Decl. ¶ 16.) Janet and Christopher also declare that Lee made them fear for their

1  lives.  (See Decl. of Janet Duncan in Opp'n to Mot. for Summ. J. ¶ 6;

2  Decl. of Christopher Gaines in Opp'n to Mot. for Summ. J. ¶ 6.)

3  Accordingly, Lee has not shown that the uncontroverted facts

4  demonstrate Lee did not intimidate Plaintiffs while causing their

5  constitutional rights to be violated.  See Cole v. Doe 1 thru 2

6  Officers of City of Emeryville Police Dep't, 387 F. Supp. 2d 1084,

7  1103-04 (N.D. Cal. 2005) (denying police officers' summary judgment

8  motion on section 52.1 claim where police officers violated

9  plaintiff's right against unreasonable search and seizure by stopping

10 and searching his vehicle even though he had not committed a traffic

11 violation).  The motion on this ground is denied.

12     B. Section 51.7 Claim

13     Lee seeks summary judgment on Plaintiffs' California Civil

14 Code section 51.7 claim, arguing that there is no "evidence that

15 [P]laintiffs' race had anything to do with Lee's attempts at servi[ng

16 the subpoena]."  (Defs.' Mot. at 9:8-9.)

17     Section 51.7(a) provides:  "All persons within the

18 jurisdiction of this state have the right to be free from violence, or

19 intimidation by threat of violence, committed against their persons

20 . . . on account of [certain characteristics, including race]."  Cal.

21 Civ. Code § 51.7(a)-(b).  "In order to prevail on this claim,

22 Plaintiffs would have to prove that [Lee] committed violence against

23 them and some degree of animus [was] a motivating factor for that

24 violence."  Tovar v. City of Fresno, 2007 WL 2253605, at *13 (E.D.

25 Cal. 2007) (citing Winarto v. Toshiba Am. Elecs. Components, Inc., 274

26 F.3d 1276, 1290 n. 15 (9th Cir.2001)).  Plaintiffs argue that "they

27 believe, under all the circumstances, that Lee's outrageous behavior

28 and dangerous tactics were motivated by racial animus."  (Pls.' Opp'n

at 13:6-8.)  However, Plaintiffs, who are African-American, present no facts showing that Lee, who is white, was motivated by racial bias. See Tovar, 2007 WL 2253605, at *13 (granting summary judgment on plaintiff's section 51.7 claim and stating that "[w]hile [plaintiff] does make allegations that she was discriminated against or that certain officers had a racist attitude towards her, there is no evidence to support those bald allegations").  Accordingly, Lee's summary judgment motion is granted on Plaintiffs' section 51.7 claim.

C. Assault

Lee seeks summary judgment on Plaintiffs' assault claim, arguing he "never put his vehicle in a position to 'ram' [P]laintiffs, nor did he have any intent to cause contact." (Defs.' Mot. at 9:24-25.)

"To make out a claim for assault under California law, [Plaintiffs must] 'establish (1) that [Lee] intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that [P]laintiff[s] w[ere] put in imminent apprehension of such contact.'" Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (quoting Brooks v. United States, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998)).

Plaintiffs argue that Lee committed an assault when he nearly rammed Plaintiffs' vehicle. (Pls.' Opp'n at 13:12-13.)  Robert declares that during the pursuit, Lee "accelerated quickly behind me, nearly ramming the rear bumper of my car." (Duncan Decl. ¶ 16.)  Lee counters that "[t]he fact that [he] contacted CHP regarding [Plaintiffs'] erratic driving, and did not request their apprehension, belies an intent to force [P]laintiffs to stop of his own accord or effort." (Defs.' Mot. at 9:25-26.)  However, Defendants have not

shown that no reasonable jury could infer from the evidence that Lee intended to cause an "imminent apprehension" of harmful contact by nearly ramming Plaintiffs' rear bumper.  See Vaughn v. Baxter, 488 P.2d 1234, 1237 (Okl. 1971) (finding that a defendant's vehicular pursuit of plaintiffs "became an assault with a dangerous instrument if [defendant] intended to cause fright and terror in the occupants of the [plaintiffs'] car.").  Further, Plaintiffs declare that they were put in an "imminent apprehension" of harmful contact.  (See Duncan Decl. ¶ 16 ("I feared for my life because I thought [] Lee was trying to run me off the road or trying to get my car to spin out."); Decl. of Janet Duncan in Opp'n to Mot. for Summ. J. ¶ 6 ("I feared for my life because it looked like [] Lee was trying to run us off the road or was trying to hit our car."); Decl. of Christopher Gaines in Opp'n to Mot. for Summ. J. ¶ 6 ("[I]t made me fear for my life [because] [i]t looked like [] Lee was trying to run us off the road or was trying to hit our car.").)  Accordingly, Lee's motion on this ground is denied.

     D. Battery

     Lee seeks summary judgment on Plaintiffs' battery claim, arguing since "Lee did not touch, or even attempt to touch any of the Plaintiffs . . . he cannot be held liable." (Defs.' Mot. at 9:16-17.) Plaintiffs counter that, although Lee did not touch Plaintiffs, "Lee helped bring to bear the CHP's force and actual touching of the Plaintiffs by his intentional act." (Pls.' Opp'n at 14:6-8.)  The CHP officers touched Janet when they placed her in handcuffs. (Duncan Decl. ¶ 20.)

     Under California law, a party injured by a battery may recover damages not only from the actual assailant, "but [also] from

any other person who aids, abets, counsels or encourages" the battery. <u>Arpin v. Santa Clara Valley Trans. Agency</u>, 261 F.3d 912, 926 (9th Cir. 2001) (quoting <u>Ayer v. Robinson</u>, 163 Cal. App. 2d 424, 428 (1958)).  A genuine issue material fact exists as to whether Lee actions expose him to liability for the CHP officers seizure of Plaintiffs. Accordingly, Lee's motion for summary judgment on Plaintiffs' battery claims is denied.

> D. Negligent Hiring and Supervision

The County seeks summary judgment on Plaintiffs' claim that the County negligently hired and supervised Lee, arguing that "Lee has not previously demonstrated that in his efforts to serve process on behalf of the District Attorney, [] he would engage in unlawful or violent acts, or, that he harbored any racial animus."  (Mot. at 7:24-8:5.)  Plaintiff counters that "Lee's conduct and driving tactics were so outrageous and dangerous, and he had such disregard for every major District Attorney policy regarding vehicle pursuits, that it is clear that Lee received no training, or received inadequate training." (Pls.' Opp'n at 11:3-5.)

Under California law, "'an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee' [and] [t]his liability extends to public entities. " <u>United States v. Sequel Contractors, Inc.</u>, 402 F. Supp. 2d 1142, 1155 (C.D. Cal. 2005) (quoting <u>Doe v. Capital Cities</u>, 50 Cal. App. 4th 1038, 1054 (1996)).

Liability for negligent hiring and supervision "is premised upon the fact that the employer either knew or should have known that the employee created a particular hazard, and that type of hazard materialized." <u>Madrigal v. California</u>, 2006 WL 2792826, at *3 (E.D.

Cal. Sept. 28, 2006) (citing <u>Capital Cities</u>, 50 Cal. App. 4th at 1054).  However, Plaintiffs present no facts showing that the County knew or should have known that Lee created a hazard.  It is undisputed that Lee has not previously been reported as engaging in either dangerous driving behavior or as exhibiting any racially intolerant actions.  (SDUF ¶ 18.)  Accordingly, the County's motion for summary judgment is granted on Plaintiffs' negligent hiring and supervision claim.

<u>SUMMARY</u>

Plaintiffs' Rule 56(f) motions is denied.  Defendants' summary judgment motion is granted on:  Plaintiffs' substantive due process claim against Lee, Plaintiffs' federal claims against the County, Plaintiffs' section 51.7 claim against Lee, and Plaintiffs' negligent hiring and supervision claim against the County.  The remainder of Defendants' summary judgment motion is denied.

IT IS SO ORDERED.

Dated:  February 22, 2008

_____
GARLAND E. BURRELL, JR.
United States District Judge